UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON GUNWALL, *et al.*,<br><br>Defendant. | Case No. C19-226RSL<br><br>ORDER GRANTING MOTION TO DISMISS & LEAVE TO AMEND |

This matter comes before the Court on defendant Brandon Gunwall's "Motion to Dismiss and for Interpleader Disbursement" (Dkt. # 78). Having reviewed the submissions of the parties and the remainder of the record, the Court finds as follows:

**I.     Background**

Plaintiff New York Life Insurance Company ("NYLIC") brought this cause of action in interpleader pursuant to Federal Rules of Civil Procedure 22 and 67, naming Brandon Gunwall, Jeffrey Swenson, and Amelia Besola as defendants. *See* Dkt. #1. The action concerns defendants' competing claims to proceeds from an NYLIC life insurance policy, due following the death of Mark L. Besola.[1] *Id.*

**A. Interpleader Action**

In 2019, NYLIC filed the instant interpleader action to determine the rightful recipient of life insurance benefits held by Mark Besola. Dkt. # 1. Mark first applied for life insurance

---

[1] For clarity, the Court refers to Mark Besola as "Mark" and Amelia Besola as "Amelia." No disrespect is intended.

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 1

coverage with NYLIC in 2007, designating his mother as the beneficiary. *Id.* at 3. In 2014, he applied for additional coverage and designated his sister, Amelia, as beneficiary to the policy coverage. *Id.* In 2016, Mark changed the primary beneficiary to Jeffrey Swenson and the contingent beneficiary to Amelia. *Id.* On October 15, 2018, the primary beneficiary was changed to Brandon Gunwall. *Id.*

Mark died on January 1, 2019. *Id.* As a result of Mark's death, Policy Decreasing Term death benefits in the amount of $20,000.00, Level Term death benefits in the amount of $650,000.00, and Accidental Death & Disbursement death benefits in the amount of $25,000.00, for a total of $695,000.00 (together, the "Death Benefits"), plus applicable claim interest, if any, became payable to a beneficiary or beneficiaries. *Id.* at 4.

On January 2, 2019, Swenson telephoned NYLIC to report Besola's death and make a claim to the Death Benefits. *Id.* By letter dated January 11, 2019, Amelia, through counsel, alleged that Gunwall was disqualified as the beneficiary to the policy, by virtue of meeting the definition of "abuser" or "slayer" of the insured under RCW 11.84.010. *Id.* Accordingly, NYLIC concluded that it could not "determine factually or legally who is entitled to the Death Benefits," and filed the instant interpleader action requesting "that this Court determine to whom the Death Benefits should be paid." *Id.* at 5. On September 20, 2019, this Court granted NYLIC's motion to deposit the funds and dismissed NYLIC from the case. Dkt. # 34.

In response to NYLIC's complaint, Amelia filed an Answer asking, *inter alia*, that the "Court find that Brandon Gunwall and Jeffrey Swensen are disqualified as beneficiaries to the policy, by virtue of meeting the definition of 'abuser' or 'slayer' of the Insured under RCW 11.84.010." Dkt. # 18 at 3.[2] Washington state law prohibits a "slayer" or "abuser" from "acquir[ing] any property or receiv[ing] any benefit as the result of the death of the decedent." RCW 11.84.020. Under the statute, a "decedent" is "[a]ny deceased person who, at any time during life in which he or she was a vulnerable adult, was the victim of financial exploitation by

---

[2] Defendant Jeffrey Swenson has since assigned his rights related to Mark Besola and this action to Defendant Amelia Besola. *See* Dkt. # 75 at 2.

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 2

an abuser." RCW 11.84.010(2)(b); *see also* RCW 11.84.010(6) (explaining that "'[v]ulnerable adult' has the same meaning as provided in RCW 74.34.020"). "Abuser" means any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful financial exploitation of a vulnerable adult. RCW 11.84.010(1).

On December 16, 2019, this Court stayed the instant interpleader proceedings pending the outcome of lawsuits brought by Amelia in state court. Dkt. # 59. The stay was lifted on April 10, 2023, following the conclusion of relevant litigation in state court. Dkt. # 76.

### B. State Court Lawsuit Regarding Fidelity Assets

Amelia brought two lawsuits in state court under the Washington Trust and Estate Dispute Resolution Act ("TEDRA"). The first lawsuit challenged Gunwall's entitlement to the funds held in Mark's various accounts at Fidelity Brokerage Services, to which Gunwall had been designated the beneficiary. Dkt. # 78-2 at 5-16. The lawsuit sought to "disinherit Gunwall from receiving any assets of Mark" on the basis that the Fidelity designation to Gunwall was the product of undue influence and/or that Gunwall was an "abuser" under RCW 11.84. *Id.* at 15.

The Pierce County Superior Court entered a summary judgment order dismissing all claims against Gunwall on November 6, 2020. *Id.* at 20-24. The Court of Appeals affirmed the trial court's dismissal on June 30, 2022. *Id.* at 35. The Court of Appeals issued its mandate certifying the final decision on January 6, 2023. *Id.* at 66-67.

### C. State Court Will Contest

Amelia's second lawsuit contested the validity of a December 6, 2018 will that had been filed with the state court by Eric Pula. The will, which was filed on May 8, 2019, several months after Mark died, *see id.* at 118, expressly disinherited Amelia, *id.* at 134. The will also stated that "[i]n exchange for taking care of the dogs, Gunwall would receive a life insurance policy for the care and support of Mark's animals." *Id.* at 136.

In the petition challenging the will, Amelia raised a number of arguments, including: (1) that Mark lacked testamentary capacity when he executed the December 6, 2018 will; (2) the December 6, 2018 will was the product of undue influence; (3) the December 6, 2018 will was the product of an insane delusion; (4) the December 6, 2018 will was the product of fraud; (5)

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 3

the December 6, 2018 will was the product of the unauthorized practice of law; (6) the December 6, 2018 will was not signed and was improperly executed; (7) the December 6, 2018 will beneficiaries were disinherited for financial exploitation under RCW 11.84. *Id.* at 78-83. The petition asked the state court to enter a number of orders, including "[a]n Order finding that Eric Pula, Brandon Gunwall, and Kelly McGraw, among unknown John Does[,] financially exploited a vulnerable adult" and "[i]n the alternative; an Order disinheriting Eric Pula, Brandon Gunwall, and/or Kelly McGraw from the Estate of Mark Besola." *Id.* at 84.

The state court granted partial summary judgment in favor of the personal representative of the estate as to "A. Claims that Mark Besola lacked testamentary capacity on December 6, 2018," "B. Claims that Mark Besola's Will was a product of undue influence," "C. Claims that Mark Besola's Will was the product of an insane delusion," "E. Claims that any beneficiary engaged in the unauthorized practice of law with respect to the Will of Mark Besola," and "G. Claims based on Mark Besola being a 'Vulnerable Adult.'" *Id.* at 88-89. In a separate order, based on Gunwall's joinder in the personal representative's motion for summary judgment, the court dismissed "any and all claims against Brandon Gunwall" in the will contest. *Id.* at 94.

Following these orders on summary judgment, Amelia's claims that (1) the will was the product of fraud and (2) that the will was not signed/was improperly executed were left for trial. *See id.* at 78-83. Trial began on February 22, 2021, and the state court initially found that the December 2018 will was valid. *Id.* at 139-40. However, before the state court entered findings of fact and conclusions of law in the case, Amelia identified new evidence from SwiftForm, a website providing legal document templates that users can customize, showing that the December 2018 will had been created after Mark's death. *Id.* at 140. Based on this new evidence, the state court reopened the trial and subsequently determined that the December 2018 will was fraudulent. *Id.* at 140-41. However, none of the court's findings in the reopened trial cast doubt on its prior summary judgment rulings. Indeed, the trial court's final findings of fact and conclusions of law specifically notes that "most of the[] claims" in the petition "were dismissed on summary judgment." *Id.* at 122.

## II.   Discussion

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 4

     Gunwall asks that this Court dismiss Amelia's claim that he is barred from inheriting the life insurance benefits under RCW 11.84 on the basis that this claim has already been fully litigated in the state court proceedings and is accordingly precluded from relitigation here under the doctrines of res judicata and collateral estoppel. *See* Dkt. # 78.

     Collateral estoppel and res judicata are equitable doctrines that preclude relitigation of "already determined causes." *Bordeaux v. Ingersoll Rand Co.*, 71 Wn. 2d 392, 395-96 (1967). Both doctrines share a common goal of judicial finality and are intended to "curtail multiplicity of actions, prevent harassment in the courts, and promote judicial economy." *State v. Dupard*, 93 Wn. 2d 268, 272 (1980). The two doctrines are distinguishable in scope. "Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties." *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 152 Wn. 2d 299, 306 (2004). Res judicata, or claim preclusion, bars litigation of claims that were brought or might have been brought in a prior proceeding. *Loveridge v. Fred Meyer, Inc.*, 125 Wn. 2d 759, 763 (1995).

**A. Res Judicata**

     Gunwall first argues that dismissal is proper because the instant claim is barred by the doctrine of res judicata. Dkt. # 78 at 7. A defendant may raise the affirmative defense of res judicata in a motion to dismiss under Rule 12(b)(6). *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). When considering the preclusive effect of a state court decision, this Court must "'give the same preclusive effect to [that] judgment as another court of that State would give,' meaning that we apply res judicata as adopted by that state." *Adam Bros. Farming v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010) (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)). Thus, here, the Court looks to Washington law.

     "Res judicata precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits." *Weaver v. City of Everett*, 194 Wn. 2d 464, 480 (2019). A final judgment on the merits will have preclusive effect only if the party seeking to apply res judicata can establish four elements as between a prior action and a subsequent challenged action: "concurrence of identity . . . (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 5

the claim is made." *N. Pac. Ry. Co. v. Snohomish County*, 101 Wn. 686, 688 (1918). "The res judicata test is a conjunctive one requiring satisfaction of all four elements." *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn. 2d 853, 866 (2004).

Here, Amelia concedes that the persons and quality of persons requirements are met, *see* Dkt. # 79 at 8 n.1, but argues that the state court lawsuits did not involve the same subject matter or cause of action as the instant interpleader case. She also appears to argue that the summary judgment order entered in the will contest is not a final judgment on the merits.

### 1. Final Judgment

The Court first addresses the preclusive effect of the state court's summary judgment order in the will contest. Amelia argues that "the court's earlier ruling concerning Mark's testamentary capacity in December 2018 . . . was obviously mooted in light of the court's subsequent determination that the will was faked." Dkt. # 79 at 7.

As a threshold matter, the Court is not convinced that the summary judgment order was rendered moot. A party asserting mootness faces a "heavy" burden. *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979). Here, Amelia has failed to meet this burden. While it is true that the question of whether the will beneficiaries were entitled to inherit anything under the will has been mooted by the state court's finding that the will was fraudulent, the state court's determination that Amelia had failed to raise a triable issue of fact as to whether Mark was a "vulnerable adult," or lacked testamentary capacity/was subject to undue influence in December 2018 is not clearly undermined by the will's later invalidation.

Furthermore, in Washington, a judgment in a case that has subsequently become moot may be preclusive if left of record. *See Nielson By & Through Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn. 2d 255, 261-65 (1998) (finding that a judgment entered in federal court determining a damages award of $3.3 million was "a final judgment on the merits for purposes of applying the doctrine of collateral estoppel" even where the parties had subsequently filed an appeal and then settled the claim for $2.85 million); *cf. Sutton v. Hirvonen*, 113 Wn. 2d 1, 9-10 (1989) (explaining that vacatur necessarily eliminates preclusive effect of judgment). Here, the summary judgement order has not been vacated. Dkt. # 78 at 5. Thus, the Court finds that the

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 6

summary judgment order constitutes a valid final judgment and will consider its preclusive effect on the instant action.

### 2. Subject Matter

The Washington Supreme Court has repeatedly held that "the same subject matter is not necessarily implicated in cases involving the same facts." *Hisle*, 151 Wn. 2d at 866 (citations omitted). Instead, "[c]ourts generally focus on the asserted theory of recovery rather than simply the facts underlying the dispute." *Marshall v. Thurston Cnty.*, 165 Wn. App. 346, 353 (2011).

Gunwall argues that this case involves the same subject matter as the state court cases – specifically, "Amelia's allegation that Gunwall had manipulated, unduly influenced and financially exploited Mark such that Mark's designation of him as the beneficiary of a non-probate asset of his estate is invalid." Dkt. # 78 at 11.

Amelia contends that the subject matter of this case is distinct. Specifically, she argues that (1) the life insurance benefits are different from the assets at issue in state court (the funds in the Fidelity accounts); (2) the relevant time period is different; and (3) there is a new question of whether the life insurance designation was conditioned on Gunwall's promise to care for Mark's dogs after his death.

The Court is unconvinced by Amelia's first argument – the fact that there are two different assets at issue does not mean the subject matter of the case is distinct. Here, the relevant question is whether Gunwall is barred from inheriting under RCW 11.84 (Amelia's "theory of recovery"). The statute does not distinguish between different types of assets – it prohibits *any* inheritance by one found to be a "slayer" or "abuser" under the statute. *See* RCW 11.84.020.

Amelia's second argument – that the cases cannot share the same subject matter because they deal with different time periods – is similarly unavailing. While it is true that each transaction took place at a different time – Gunwall was designated the beneficiary of the Fidelity assets in April of 2018, he was designated the beneficiary of the life insurance proceeds in October 2018, and the will that was the subject of the will contest in state court was

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 7

purportedly signed in December 2018 – the state court opinions cover the relevant time period for the life insurance designation.

Amelia understandably dedicates much of her response to the argument that the state court's ruling in the Fidelity case does not support a finding of identity of subject matter. *See* Dkt. # 79 at 9-11. The Court agrees with this argument, as the Court of Appeals decision makes clear that it only considered the time period leading up to the April 2018 designation change. *See, e.g.*, Dkt. # 78-2 at 56-57 (explaining that while "Gunwall may have been performing some health care tasks . . . later that year, there was no evidence that 'at the time the alleged financial exploitation took place' Gunwall was providing any *health care* services to Mark"). Accordingly, the state court did not consider or address whether Mark might have met the standard for a "vulnerable adult" under the statute at some later point (for example, in October 2018 when he became the beneficiary of the life insurance proceeds at issue here).

However, as Gunwall points out, this Court must also consider the preclusive effect of the will contest. *See* Dkt. # 81 at 3-4. In the will contest, the state court entered a summary judgment order dismissing, *inter alia*, any claim requiring that the decedent be a "vulnerable adult," including claims brought under RCW 11.84. Dkt. # 78-2 at 88-89. Accordingly, the state court ruled that there was insufficient evidence to raise a triable issue of fact as to whether Mark was a "vulnerable adult" during the time period preceding the creation of the December 2018 will, which encompasses the October time frame relevant to the life insurance designation. Thus, considering both state court orders, the Court finds that the relevant time frame *was* considered by the Court in adjudging the will contest.

Finally, Amelia argues that "[t]he facts [in this case] indicate a distinct purpose for the insurance benefits distinguishable from the Fidelity account: the insurance policy death benefits were changed to Gunwall to be held in trust by him specifically for the care of Mark's dog family" and thus identity of subject matter cannot be established. Dkt. # 79 at 9. This argument misses the mark. Gunwall is arguing that res judicata precludes Amelia from claiming that he is barred from inheriting the life insurance proceeds pursuant to RCW 11.84.020 in this forum. Whether Mark conditioned the receipt of the life insurance proceeds on Gunwall's promise to

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 8

care for Mark's dogs does not go to the question of whether Mark is a "vulnerable adult" or whether Gunwall is an "abuser" under the statute.

Accordingly, the Court finds that the instant suit and state court suits share an identity of subject matter jurisdiction.

### 3. Cause of Action

Amelia also contests Gunwall's assertion that both cases share an identity of cause of action. "While identity of causes of action cannot be determined precisely by mechanistic application of a simple test, the following criteria have been considered: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Rains v. State*, 100 Wn. 2d 660, 663-64 (1983).

Here, theoretically Gunwall's interest in the prior will contest judgment would be impaired by prosecution of the current action. Because the will at issue in the will contest has since been found invalid, this analysis is somewhat more complex. However, to the extent that the state court ruling on the will contest found that Mark was not a "vulnerable adult," and Gunwall was accordingly not barred from inheriting from Mark under RCW 11.84, a finding by this Court that Mark *was* a vulnerable adult would "destroy" the relevant rights gained by Gunwall.[3]

Additionally, the evidence Amelia presented in state court in her attempt to show that Mark was a "vulnerable adult" spanned over several years, and certainly included the relevant time frame at issue here. *See, e.g.*, Dkt. # 78-2 at 73-76 (alleging facts about Mark's health, substance abuse disorder and behavior from the 1990s until his death in January 2019). Thus,

---

[3] The Court notes that Gunwall's receipt of the Fidelity funds would likely be unaffected by the instant case, as the state court focused its inquiry on whether Mark was a vulnerable adult *at the time* of the designation (April 2018) but made no finding as to whether Mark may have later become a vulnerable adult. *See* Dkt. # 78-2 at 56-57. Thus, a determination by this Court that Mark subsequently qualified as a vulnerable adult at the time of the life insurance designation (October 2018) would not necessarily "destroy" the rights gained by Gunwall in the suit over the Fidelity assets.

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 9

"substantially the same evidence" would be presented in both actions. Both state court suits and the instant matter also involve infringement of the same right – to be free from financial exploitation when naming beneficiaries of one's assets. And while Amelia argues that the life insurance benefits are distinct from the will and the Fidelity accounts, such that the instant suit does not "arise out of the same transactional nucleus of facts," the Court disagrees. Both suits are predicated on the same conduct – Gunwall's alleged financial exploitation of a vulnerable adult. *Cf. Norco Const., Inc. v. King Cnty.*, 106 Wn. 2d 290, 294 (1986) (finding the two suits did "not arise out of the same transactional nucleus of facts since [plaintiff] sought damages resulting from different conduct by King County in the first action than in the present action."). Accordingly, the Court finds that the instant suit and the state court suits share an identity of cause of action.

As all four elements are met, the doctrine of res judicata precludes Amelia from bringing a claim against Gunwall under RCW 11.84 in this action. As the Court has determined that the claim is barred on res judicata grounds, it need not reach the question of whether the claim is also barred by the doctrine of collateral estoppel.

**B. Amended Claims**

In her response, Amelia asks the Court for leave to amend her Answer, arguing that even if her "claims under RCW 11.84 are appropriately precluded under collateral estoppel or res judicata, [she] has at least two other valid claims that have not been formally alleged." Dkt. # 79 at 14. Specifically, she seeks to add a claim of breach of trust against Gunwall on the basis that "Mark left the insurance proceeds to Gunwall in exchange for his agreement to care for his animal family," and Gunwall has failed to do so. *Id.* at 15. She also seeks to add a claim that Mark lacked the capacity to make the insurance beneficiary change, and thus the designation should be invalidated. *Id.* at 16.

When the stay was lifted in the instant case, the Court issued a new case management Order, setting the deadline for amending pleadings for September 6, 2023. Dkt. # 76. Accordingly, Amelia's request is reviewed under Rule 15. *See* Fed. R. Civ. P. 15(a)(2); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Once the time has passed for

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 10

amending pleadings as a matter of course, Rule 15(a)(2) provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, the policy in favor of leave to amend is applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 295 F.3d 708, 712 (9th Cir. 2001) (citations and quotation marks omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that Rule 15's command to "freely give leave" to amend must be "heeded" by the courts). Leave to amend, however, "is not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990)), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). The Court considers the following five factors to assess whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Id.* (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

"Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The party opposing amendment bears the heavy burden of overcoming this presumption. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). The Court addresses each of the factors in turn.

### 1. Futility of Amendment

Gunwall argues that Amelia's proposed amendments are barred by res judicata and collateral estoppel – the Court interprets these arguments as going to the futility of the proposed amendment. Dkt. # 81 at 10-11. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Here, Gunwall contends that any claim regarding the alleged "testamentary trust" fails because "[t]his entire argument is based on her misplaced reliance on the now-void will and can therefore simply be ignored." Dkt. # 81 at 10. However, the Court notes that the invalid will was not the only place the alleged trust was mentioned. *See, e.g.*, Dkt. # 80 at 27 (Gunwall stating at

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 11

hearing to address who would take possession of Mark's dogs, which predated the discovery of the December 2018 will, that the "reason" Mark left him a "life insurance policy" was so that he could "take care of" the dogs); *see also* Dkt. # 80 at 44, 46, 66.

Gunwall also argues that any argument regarding Mark's alleged lack of capacity was "fully and finally litigated between the parties in State Court." Dkt. # 81 at 11. The state court Order in the will contest only dismissed "[c]laims that Mark Besola lacked testamentary capacity on December 6, 2018" and "[c]laims that Mark Besola's Will was a product of undue influence." Dkt. # 78-2 at 88. And the petition in the suit concerning the Fidelity assets sought only an "Order determining that Gunwall . . . became beneficiary of the Fidelity Accounts by a product of undue influence." Dkt. # 78-2 at 15. Thus, unlike the state court's broader findings with regard to whether Mark was a vulnerable adult under the relevant statute, the state court's findings regarding Mark's capacity and undue influence appear to be much more focused on the specific transactions at issue in the state court proceedings (i.e., at the creation of the will or the transfer of the Fidelity accounts).

Accordingly, at this stage in the litigation, the Court cannot conclude that the proposed amendments would be futile. *See Pilavskaya v. Henderson*, No. C11-4075CAS, 2012 WL 3279517, at *5 (C.D. Cal. Aug. 9, 2012) ("Whether [] claims are properly pled is better left for a motion to dismiss."); *Defazio v. Hollister, Inc.*, No. C04–1358WBS, 2008 WL 2825045, at *3 n.5 (E.D. Cal. July 21, 2008) (finding opposition papers arguing the merits of plaintiffs' proffered amendments were premature in that they required the court to assume that there were no facts that could support plaintiffs' proposed claims).

### 2. Bad Faith & Undue Delay

As an initial matter, "[d]elay alone does not provide sufficient grounds for denying leave to amend . . . ." *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981). Here, however, Gunwall argues that Amelia's request for leave to amend is a dilatory maneuver in bad faith because (1) she "knew of her 'new' claims for years" but failed to assert them either in this matter or in state court; and (2) she purposely did not assert these claims earlier in order to "preserve claims for this case," thus avoiding potential res

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 12

judicata or collateral estoppel bars. Dkt. # 81 at 12. As to Amelia's first proposed amendment (regarding the testamentary trust), the Court notes that this argument relates specifically to the asset at issue in this suit (the life insurance proceeds). Similarly, while it is clear that Amelia raised arguments regarding Mark's capacity and the potential of undue influence in the state court proceedings, those arguments were specific to the transactions at issue in the state court cases (i.e., the creation of the December 2018 will and the Fidelity accounts). Thus, it is not clear that Amelia could have raised the claims she seeks to add to her Answer in the state court proceedings. Furthermore, Amelia raised these new claims in her first filing to the Court since the stay was lifted. The Court is not persuaded that she has acted in bad faith.

### 3. Prejudice to the Opposing Party

Gunwall further argues that leave to amend should not be granted because of the prejudice he would suffer. Dkt. # 81 at 11-12. Specifically, he argues that he "has already been kept from his funds over four years" and "will certainly be prejudiced by any amendment to change claims that have been pending herein for those four years."[4] While Gunwall's interest in accessing the life insurance proceeds is understandable, he will not be entitled to those funds if Amelia is able to prove the claims raised in her request for leave to amend. Gunwall has failed to show that litigating those claims on the merits would prejudice him.

### 4. Previous Amendment

Finally, Amelia has not previously amended her answer, which militates in favor of granting leave to amend. *See Foman*, 371 U.S. at 182 (explaining that leave to amend may be denied where the party has repeatedly failed to cure deficiencies by previously allowed amendments); *Leighton*, 833 F.2d at 186 n.3 (explaining that the district court's discretion to deny leave to amend is particularly broad where plaintiff previously amended the complaint).

---

[4] Gunwall also argues that he is prejudiced because Amelia could have (1) made a motion to transfer this matter to state court or (2) immediately sought to amend her Answer in this case when the stay "could have been lifted over a year ago." Dkt. # 81 at 11-12. These arguments go more to delay then to prejudice. Moreover, Gunwall fails to explain why he – as a fellow claimant in this interpleader action – could not have made a motion to lift the stay or to transfer the case to state court.

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 13

Having assessed the relevant factors, the Court finds granting Amelia's request for leave to amend is proper.[5]

### III. Conclusion

For all of the foregoing reasons, defendant's motion to dismiss Amelia Besola's RCW 11.84.020 claim against Brandon Gunwall (Dkt. # 78) is GRANTED on the ground that the claim is barred by res judicata.

Amelia Besola's request for leave to amend is also GRANTED. Ms. Besola may file her amended Answer within 21 days of this Order.

IT IS SO ORDERED.

DATED this 30th day of May, 2023.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[5] Because the Court grants Amelia's request for leave to amend, this matter is not dismissed, and the Court does not reach Gunwall's request that it "order the payment of all funds deposited into the registry of this court for this action ($693,813.76 plus interest) to Gunwall." Dkt. # 78 at 19.

ORDER GRANTING MOTION TO DISMISS &
LEAVE TO AMEND - 14